UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Katarzyna Kasica a/k/a Katarzyna Modzelewski,<br>          *Plaintiff*, | Civil No. 3:08cv1010 (JBA) |
| *v.* | |
| United States Department of Homeland Security,<br>Citizenship and Immigration Services, et al.,<br>          *Defendants.* | August 20, 2009 |

RULING ON MOTION TO DISMISS

This case arises out of Katarzyna Kasica's unsuccessful efforts to become a naturalized U.S. citizen.  Kasica, a lawful permanent resident of Polish origin, has sued the federal government, naming several defendants: U.S. Citizenship and Immigration Services ("CIS"), the Attorney General, the Secretary of Homeland Security, and three CIS officials (collectively, the "Government").   Kasica's amended complaint alleges due-process violations, seeks relief pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 ("APA"), demands attorney's fees and costs pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412(d), and requests injunctive and declaratory relief pursuant to 28 U.S.C. § 1361 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.   Now before the Court is the Government's motion to dismiss for failure to state a claim and for lack of subject-matter jurisdiction.

I.      Factual Background

Kasica's amended complaint alleges the following facts.  In August 2005, Kasica, then going by the name "Katarzyna Modzelewski," filed an application for naturalization with CIS.  In her application, she asserted that she was eligible in part because she was married to and living with a U.S. citizen.  Kasica appeared for her naturalization interview in January

2006, at which time CIS requested that her husband submit a written statement avowing that they were living together "in marital union." *See* 8 U.S.C. § 1430 (describing the naturalization requirements for a lawful permanent resident who has been "living in marital union" with a U.S. citizen spouse for at least three years); 8 C.F.R. § 319.1 (interpreting the statutory text in § 1430). Having passed her naturalization examination, Kasica was scheduled for an oath ceremony on May 5, 2006.

Kasica's husband, however, had initiated divorce proceedings in July 2005. Nevertheless, Kasica claims, they "continued to reside together as husband and wife, and their divorce would not be final for another six months." (Am. Compl. [Doc. # 12] ¶ 5.) On January 26, 2006, two days after Kasica's husband sent the written statement to CIS confirming the validity of their marriage, their divorce was finalized in Connecticut Superior Court, and Kasica "left the marital home." (*Id.* ¶ 11.)

When Kasica arrived for her oath ceremony in May 2006, she informed CIS personnel that she was divorced and provided them with her final divorce paperwork and her new address. CIS officers told Kasica that she was no longer eligible to be naturalized and that she would receive further correspondence in the mail. On August 10, 2006, Kasica received a "written decision" from CIS finding her ineligible on the ground that she "gave false testimony" regarding her marital status and "thereby lacked good moral character." (*Id.* ¶¶ 18–19.) Kasica disputes these findings and claims she had no obligation to disclose the details of her divorce proceedings until the dissolution was final. This CIS decision further advised Kasica that she could request a rehearing, but she declined to do so because she "had nothing to gain" from pursuing an administrative appeal. (*Id.* ¶ 25.)

Meanwhile, in June 2006, having attained five years of continuous residency, Kasica

2

filed a second naturalization application.  CIS denied this application in September 2007,

citing again Kasica's "false testimony"—that is, both her misrepresentation of her marital

status in her first application and her failure to disclose that misrepresentation in her second.

Although Kasica apparently did not request a rehearing of this second decision, in December

2007 her lawyer wrote to CIS officials in Hartford requesting a readjudication of her case.

CIS declined to revisit Kasica's 2005 and 2006 applications.

        In July 2008, Kasica initiated this civil action, alleging that the Government violated

her rights to due process as follows:

> 40.    The Defendant[s'] unconstitutional interpretation of 8 U.S.C.
> § 1430(a) permits them to unjustifiably inquire into irrelevant
> matters of naturalization applicant[s'] married lives such as whether
> the naturalization applicant and her spouse are living together at the
> time of the naturalization examination.

> 41.    The second [naturalization] decision is further in violation of the
> Plaintiff's due process rights in that there is absolutely no evidence
> whatsoever that the Plaintiff ever gave false testimony to CIS in any
> of her applications. . . .

> 72.    This denial was the result of an unconstitutional regulation and
> statutory interpretation, as well as a pattern and practice of the
> Defendants to summarily deny naturalization applicants without
> providing the applicant the right to challenge or address the
> allegation of false testimony before Defendants' final determination
> and decision [and to] misleadingly, inadequately and incompletely
> notify the Plaintiff of the full effect of their naturalization denial and
> reasons therefor[.] . . .

> 81.    This decision resulted from a pattern and practice of the Defendants
> in incorrectly considering pending divorce actions, rather than final
> divorce judgments relevant to naturalization eligibility and
> proceedings.

> 82.    This pattern and practice is widespread, and represents a carefully
> orchestrated program of constitutional violations.

83.     The Plaintiff and other similarly situated aliens have a constitutionally protected liberty interest in receiving a fair hearing regarding naturalization applications.

84.     The Plaintiff and other similarly situated aliens were not afforded an appropriate level of process in their naturalization applications.

(Am. Compl. ¶¶ 40–41, 72–73, 81–84.)  Kasica also seeks to have this Court declare these practices unconstitutional, and she requests further relief in the form of nullifying the 2006 and 2007 CIS decisions and ordering her 2006 application reopened.

II.     Relevant Legal Framework

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible so long as "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949. Conclusory allegations are not sufficient.  *Id.* at 1949–50.

Kasica's amended complaint implicates several provisions of statutory immigration law.  To be eligible for naturalization, a lawful permanent resident must (1) have resided continuously in the U.S. for at least five years, (2) continue to reside in the U.S. after filing a naturalization application until citizenship is conferred, and (3) demonstrate "good moral character." 8 U.S.C. § 1427(a).  If an applicant is "living in marital union" with a U.S. citizen, this residency requirement is reduced from five years to three.  8 U.S.C. § 1430(a). According to CIS regulations, "[a]n applicant lives in marital union with a citizen spouse if the applicant actually resides with his or her current spouse."  8 C.F.R. § 319.1(b)(1).  CIS

"thus envisions that a couple actually reside together in order for an applicant to take advantage of the 'citizen spouse' provision for citizenship," which is an interpretation of § 1430(a) "based on a permissible construction" and "entitled to great deference." *United States v. Moses*, 94 F.3d 182, 185 (5th Cir. 1996).

In the event that CIS denies an application for naturalization, "the applicant may request a hearing before an immigration officer." 8 U.S.C. § 1447(a). Unsuccessful applicants may also seek judicial review under two scenarios. First, if the government "fail[s] to make a determination" within 120 days after examination of the applicantion, the alien can petition the appropriate district court to "either determine the matter or remand the matter, with appropriate instructions, to [immigration authorities] to determine the matter." § 1447(b). Second, an unsuccessful applicant may request full review in a district court as follows:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). The administrative hearing described in § 1447(a) is treated as a statutory exhaustion requirement and is a prerequisite to subject-matter jurisdiction in district court. 8 C.F.R. § 336.9(d); *Baez-Fernandez v. I.N.S.*, 385 F. Supp. 2d 292, 294 (S.D.N.Y. 2005); *Chavez v. I.N.S.*, 844 F. Supp. 1224, 1225 (N.D. Ill. 1993); *see also Ponnapula v. Campbell*, No. 06-2350, 2007 WL 2688550, at *3 (W.D. Tenn. Sept. 11, 2007) (collecting non-precedential cases from several circuits); *cf. Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 579–80 (1989) (noting that a statutory exhaustion requirement

is jurisdictional).

III.   Discussion

The Government seeks dismissal on two independent grounds.   First, the Government argues that Kasica has failed to state a viable claim arising out of her due-process rights and that her amended complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).   Alternatively, the Government contends that this case is in substance a substitute for an action seeking review of a naturalization determination. Viewed in this manner, the Government argues, Kasica's amended complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction. For the purposes of this ruling, however, the Court will focus on the sufficiency of Kasica's claims as she actually pleaded them.

A.   Due Process

Kasica principally claims that the way in which CIS processed her naturalization applications violated her rights under the Due Process Clause of the Fifth Amendment.  To state a viable due-process claim, a plaintiff must first identify a protected property or liberty interest. *Board of Regents v. Roth*, 408 U.S. 564, 571 (1972).  Given such an interest, "a court must then consider whether the government deprived the plaintiff of that interest without due process." *Narumanchi v. Board of Trustees*, 850 F.2d 70, 72 (2d Cir. 1988).

According to Kasica's amended complaint, the interest at stake in this case is her "liberty interest in receiving a fair hearing regarding naturalization applications." Assuming for the sake of argument that this is a sufficient interest, Kasica has not alleged facts which show that CIS deprived her of that interest without due process of law.  Most critically, Kasica simply did not take advantage of the procedures that CIS made available to her.  She

6

declined to request a hearing pursuant to § 1447(a), claiming that such additional review would be futile.  But, "[h]aving chosen not to pursue available administrative review, [Kasica] is hardly in a position to claim that such review denied [her] due process." *Aronson v. Hall*, 707 F.2d 693, 694 (2d Cir. 1983).  By declining to proceed with further CIS review, she cannot now claim that the administrative process she failed to utilize was inadequate: "failure to submit to the [available] procedures precludes consideration of the fairness of those proceedings in practice." *Narumanchi*, 850 F.2d at 72.

The authority Kasica cites is of no further help to her.  In support of her position that she has alleged a deprivation of constitutional magnitude, Kasica relies on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 490–92 (1991), a case in which the Supreme Court upheld a class-action challenge on due-process grounds to practices by CIS's predecessor entity, the Immigration and Naturalization Service ("INS").  On appeal, *McNary* concerned a narrow question: whether a particular provision of the Immigration and Nationality Act, 8 U.S.C. § 1160(e)(1), precluded federal jurisdiction over "collateral challenges to unconstitutional practices and policies used by the [INS] in processing applications." *McNary*, 498 U.S. at 491–92.  Importantly, however, it was not contested on appeal that "the INS routinely and persistently violated the Constitution." *Id.* at 491.  Moreover, the Supreme Court further emphasized that, if the plaintiffs' constitutional challenge were deemed not cognizable, they "would not as a practical matter be able to obtain meaningful judicial review of their application denials or their objections to INS procedures." *Id.* at 495–97.

Judicial review of naturalization determinations is entirely different.  District courts have plenary authority to review naturalization proceedings, so long as an unsuccessful applicant first exhausts his or her administrative remedies. *See* 8 U.S.C. § 1421(c).  Thus, the

7

rationale underpinning the Court's conclusion in *McNary* is not presented in this case.

Kasica's substantive allegations also fail to support her conclusory references to due process. Consistent with her discussion of *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996), Kasica variously alleges that CIS has engaged in a "pattern and practice" of "carefully orchestrated" unconstitutional misconduct, affecting a "widespread" class of similarly situated naturalization applicants. Even though the *Malik* panel recognized that such allegations may support a viable due-process claim in the immigration context, the Second Circuit in that case affirmed the dismissal of the plaintiff's complaint on the basis that he "proffered only conclusory allegations" and "failed to allege any facts" supporting his class-wide assertions. *Id.* at 562–63. Here, too, Kasica has alleged no facts sufficient to support her contention that CIS officials engaged in a pattern and practice of unconstitutional action. Her allegations on this score are entirely conclusory, lacking any specific facts concerning any naturalization determinations other than her own. Particularly in light of the Supreme Court's recent clarification that conclusory allegations (including those relating to high-level government misconduct) are not enough to pass muster under Rule 12(b), Kasica must allege "sufficient factual matter" for her complaint to be "plausible on its face." *Iqbal*, 129 S. Ct. at 1949. Having provided no factual amplification of her conclusory allegations, Kasica has not complied with the pleading requirements imposed by the federal rules.

Therefore, because Kasica failed to take advantage of the CIS procedures she challenges as inadequate, and because her class-wide allegations lack any factual specificity, she has failed to state a viable claim that the Government violated her due-process rights.

B.    Remaining Issues

With Kasica's due-process claim found deficient, what remains in her amended

8

complaint are the references to the APA and her requests for declaratory relief.  These claims, too, must be dismissed, because Kasica has provided no valid reason why they can survive in the absence of her underlying due-process claim based on the same allegations. *See Vaden v. Discover Bank*, 129 S. Ct. 1262, 1278 n.19 (2009) (quoting *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240 (1937), and confirming that "the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts; it is 'procedural only'"); *Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008) (noting that the APA does not independently grant subject-matter jurisdiction and that its provisions cannot override other more specific "statutory limitations on judicial review of agency action"); *cf. Baez-Fernandez*, 385 F. Supp. 2d at 295–96 (finding claims under the APA and the Declaratory Judgment Act not viable after dismissal of plaintiff's claim for relief under § 1421(c)).

At bottom, Kasica—as the Government emphasizes—is seeking essentially the same relief that Congress authorized in § 1421(c), yet she did not pursue the remedies that CIS made available to her.  During oral argument, Kasica urged the Court to recognize that she had to fashion her allegations as due-process violations because she is in an impossible bind: she cannot be naturalized until she admits that she misrepresented her marital status in the 2005 application, yet such admission will result in a conclusive determination that she lacks the requisite good moral character to be naturalized.  Moreover, according to Kasica, an administrative review of her denied applications would have been futile because CIS's original finding of dishonesty is now final and cannot be revised.  This does not necessarily follow, however, due to the broad review power Congress granted to district courts in § 1421(c).  By the statute's own text, judicial review of naturalization denials is "de novo," and a district court is authorized to "make its own findings of fact and conclusions of law"

and even to "conduct a hearing de novo on the application." § 1421(c).  In other words, the scope of a district court's review under § 1421(c) is congruent with CIS's power to naturalize a person in the first place.  *Ajlani v. Chertoff*, 545 F.3d 229, 239–41 (2d Cir. 2008).

Thus, Kasica is not in fact in a state of legal limbo.  If she properly reapplies for naturalization, and CIS again denies her application, Kasica only has to follow the administrative appellate process to satisfy the jurisdictional prerequisite in § 1447(a). Having exhausted her remedies, Kasica may then seek full judicial review of her eligibility for naturalization under § 1421(c).  But that is not the posture of the action now before the Court.  Kasica's present attempt to circumvent this statutory scheme cannot proceed because she has not stated a valid claim for relief in her amended complaint.  Kasica's arguments to the contrary are without merit.

IV.    Conclusion

Accordingly, the Government's motion to dismiss pursuant to Rule 12(b)(6) [Doc. # 14-2] is granted.  Given that the Court does not need to reach the Government's alternative Rule 12(b)(1) arguments, Kasica's motion to strike [Doc. # 15] the exhibits attached to the Government's motion is denied as moot for the reasons given at oral argument.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
————————————————————
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of August, 2009.